UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.R.,<br><br>            Plaintiff,<br><br>   v.<br><br>LELAND DUDEK<br><br>            Defendants. | Case No. 24-cv-08928-TLT<br><br>**ORDER REMANDING CASE**<br>Re: Dkt. No. 13 |

Before the Court is Plaintiff J.R.'s motion for summary judgement requesting review of Defendant's denial of Plaintiff's application for disability insurance benefits and a remand for further proceedings. ECF 13. Defendant timely filed a response brief, ECF 18. Plaintiff did not file a reply brief. In its discretion, the Court determines that the motion is suitable for decision without oral argument. *See* Civil L.R. 7-1(b).

Having considered the parties' briefs, administrative record ("AR"), relevant legal authority, and for the reasons set forth below, the Court **GRANTS** Plaintiff's request to reverse the Commissioner's final decision, in part, and **REMANDS** the matter for further proceedings consistent with this Order.

The Code of Federal Regulations require the ALJ to consider opinions from medical sources and articulate how persuasive the ALJ finds these medical opinions. 20 C.F.R. § 404.1520(c)(a). Among the sources and ALJ is required to consider are social workers whose medical opinions the Commissioner must account for and only discount is he has "germane reasons" for doing so. *Benjamin v. Berryhill*, 708 Fed.Appx. 478, 479 (9th Cir. Jan. 10, 2018); *see also Johnson v. Kijakazi*, No. 21-15919, 2022 WL 2593516 at *1 (9th Cir. Jul. 8, 2022); *see* 20

1    C.F.R. § 404.1520c. On remand, the ALJ shall provide reasons for discounting such opinions as

2    explained below.

### I.  BACKGROUND

Plaintiff J.R. ("Plaintiff") was born on July 29, 1977. Plaintiff is currently 48 years old. AR 195. While Plaintiff was in college, he was attacked by the Oakland police, jailed, and falsely accused of assaulting of police officer. AR 796. All charges were dropped, and Plaintiff was offered a settlement with the City of Oakland. *Id.* Later, when Plaintiff was 30 years old, he was drugged while his manager and coworker to attempted to rape him. AR 548. Due to his experiences, Plaintiff has a history of post-traumatic stress disorder ("PTSD"), anxiety disorder, major depressive disorder, and suicidal ideation. AR 291, 611, 619, 796.

On January 13, 2018, Plaintiff was injured while laying heavy panels for a Solar company. AR 789, 882. As a result of his injury, Plaintiff suffered back pain, neck pain and headaches. AR 257. Plaintiff also began receiving treatment for his back and neck pain on March 21, 2018. AR 652. On August 10, 2018, Plaintiff started physical therapy for his ailments. AR 690. On October 19, 2018, Plaintiff's MRI revealed disc protrusions of the thoracic and cervical spine, and mild stenosis. AR 923–24.

On June 3, 2021, Plaintiff found out that his former partner had committed suicide. AR 822. For the three years since then, Plaintiff mostly stayed in his room. AR 548. On July 25, 2022, Plaintiff started seeing Jeff Menezes, a licensed clinical social worker (LCSW), for talk therapy related to his depression, anxiety, and PTSD. AR 13–14. On November 7, 2022, Plaintiff also started treatment with psychiatrist Dr. James Wu. AR 118–19. As a part of the psychiatry treatment, Plaintiff began electroconvulsive therapy treatments ("ECT"). AR 108. But, during an ECT session on March 1, 2023, Plaintiff aspirated and had to spend two weeks recovering in the hospital. AR 108.

In the early 2000s, Plaintiff was diagnosed with irritable bowel syndrome (IBS), but in June 2023, the diagnosis was updated to Chron's disease. AR 88–89, 635. During Plaintiff's March 2023 hospital visit, a colonoscopy revealed thickening of the ileum and cecum. AR 108. Plaintiff started seeing a gastroenterologist, Dr. Robert Lerrigo, on June 2, 2023. AR 82–83. In

1  December of 2023, Plaintiff experienced a Chron's disease flare up and was hospitalized for a CT

2  enterography [to diagnose the condition of his small intestines and bowels]. AR 305–10.

## II. THE ALJ'S DECISION

On August 23, 2021, Plaintiff filed an application for insurance benefits, alleging a disability period from June 18, 2018, to December 31, 2021, the date last insured ("DLI"). AR 350. Plaintiff's initial claim was denied on March 8, 2022, and Plaintiff requested a reconsideration, which was denied August 18, 2022. AR 375, 379–80.

Plaintiff then requested a hearing in front of an Administrative Law Judge ("ALJ"), which was held on November 9, 2023. AR 48, 385. Plaintiff was not represented by an attorney during the ALJ hearing. AR 48. On December 20, 2023, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. AR 184. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during his disability period. AR 189. At step two, the ALJ found the Plaintiff "had the following severe impairments: cervical, thoracic, and lumbar spinal stenosis, anxiety, depression, post-traumatic stress disorder, cervicogenic headaches, migraine headaches, irritable bowel syndrome, carpal tunnel syndrome, and hypertension." *Id.* At step three, the ALJ found the Plaintiff did not meet or equal an impairment or combination of impairments as listed in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 189–90. At step four, the ALJ held the Plaintiff would not be able to engage in prior relevant work. AR 194. At step five, the ALJ found that Plaintiff, with a reduced range of light work RFC, would be able to perform other jobs that existed in significant numbers in the national economy. AR 195.

On April 16, 2024, Plaintiff hired an attorney. AR 595. On October 10, 2024, the ALJ's decision became final when the Appeals Council declined to review the ALJ's decision. AR 1. Plaintiff filed this action seeking judicial review of Defendant's decision. ECF 13.

## III. LEGAL STANDARD

A Court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are based on legal error are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. It

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under the Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual function capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

1  **IV.    DISCUSSION**

2     Plaintiff argues remand is necessary because the ALJ failed to fully and fairly develop the

3  record, the ALJ improperly ignored relevant medical evidence, and ignoring the relevant evidence

4  was not harmless error. ECF 13.

5     The Court considers each argument in turn.

6      **A.    The ALJ Failed to Fully and Fairly Develop the Record Regarding Relevant Evidence of Plaintiff's Sessions with Jeff Menezes, LCSW and Psychiatrist Dr. Wu.**

7

8     Plaintiff argues that the ALJ failed to fully and fairly develop the record because the ALJ,

9  despite being aware of Plaintiff's talk therapy, psychiatry and IV infusion treatment, failed to ask

10 Plaintiff for appointment information. ECF 13 at 8. Plaintiff claims that because he was self-

11 represented, he was not aware such key evidence was missing from the record. *Id.* Defendant

12 argues that the ALJ fully and fairly developed the record because the ALJ afforded the Plaintiff an

13 opportunity to submit additional medical information before concluding the file was complete,

14 thus the ALJ fulfilled his duty to develop the record. ECF 18 at 2.

15    For self-represented litigants, the ALJ had a heightened duty to "scrupulously and

16 conscientiously probe into, inquire of, and explore for all relevant facts." *Higbee v. Sullivan*, 975

17 F.2d 558, 561 (9th Cir. 1992) (per curium). The duty to "scrupulously and conscientiously probe"

18 requires the ALJ to be "especially diligent in ensuring that favorable as well as unfavorable facts

19 and circumstances are elicited." *Id.*

20    Here, Plaintiff, self-represented during the ALJ hearing, argues that the ALJ failed to fully

21 and fairly develop the record regarding the following treatments: appointments with Dr. Lerrigo

22 from February 12, 2024, to March 29, 2024, visit to Valley Medical on December 18, 2023, and

23 visit to El Camino Hospital from March 1, 2023, to March 3, 2023. AR 2. Plaintiff also

24 submitted the following information related to mental health treatment that post-dates DLI: talk

25 therapy sessions with Jeff Menezes, LCSW, from July 2, 2022, to April 11, 2024, and psychiatry

26 treatment with Dr. James Wu from November 17, 2022, to January 2, 2024. AR 2.

27    During the hearing, the ALJ asked Plaintiff about his talk therapy sessions with Menezes,

28 and Plaintiff responded he was in therapy for anxiety, depression, and suicidal ideation. AR 223–

24. The ALJ even clarified that Dr. Wu, the psychiatrist, was seeing Plaintiff for the same issues of anxiety, depression, and suicidal ideation. AR 225. The ALJ brought up the talk therapy and psychiatry treatment because the ALJ was "trying to figure out if" what was on the record was similar to the information contained in the appointment notes. AR 223. However, after this line of inquiry, the ALJ did not ask Plaintiff for talk therapy notes or psychiatry treatment information, nor did the ALJ check to see if this information was missing from the record. AR 225–26.

These facts are evocative of those presented in *Widmark v. Barnhart*. 454 F.3d 1063, 1069 (9th Cir. 2006) There, the Ninth Circuit remarked that "the only effort the ALJ made to develop a full and fair record with regard to Widmark's ability. . . [was] when he asked Widmark, 'Is there anything else you want to tell me about your health or your working capabilities that you think might be important for me to know?'" *Id.* The court went on to find that "[n]o ALJ could reasonably believe that this single, open-ended question was adequate to elicit the sort of information necessary to fully and fairly develop the record and to properly protect Widmark's interests." *Id.* This Court finds that the ALJ's line of questioning did not scrupulously and conscientiously probe into Plaintiff's evidence of treatments and therapy sessions. The ALJ should have followed up on the medical records because a self-represented Plaintiff "can hardly be expected to realize" how critical this information would be to a disability determination. *Widmark*, 454 F.3d 1063 at 1069.

### B. The ALJ erred by Failing to Consider the Relevant Medical Opinions of Menezes, LCSW, and Dr. Wu in Step Three and Four of the Analysis.

Plaintiff contends the evidence of talk therapy, psychiatry appointments and IV infusion treatment were relevant to a disability determination, specifically at steps three and four, even though the treatments occurred post-DLI. ECF 13 at 9–15.

Defendant argues the talk therapy, psychiatry treatment and IV infusion treatment evidence were not relevant since the appointments and treatments occurred post-DLI and do not relate to the insurance period. ECF 18 at 2. Defendant contends these documents are not retrospective to Plaintiff's condition pre-DLI. ECF 18 at 2. *See Smith*, 849 F.2d 1222 at 1225.

The Court finds the ALJ was required to develop the record for relevant evidence which

includes "reports containing observations made after the period for disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (quoting *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1981)).  However, "[a]ny deterioration in the [claimant's] condition subsequent to [the date last insured] is, of course, irrelevant." *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971).  The Court considers the relevance of (i) therapy notes by Jeff Menezes, LCSW and psychiatry treatment by Dr. Wu, and (ii) IV infusion treatment.

        **i.   Therapy Notes with Menezes, LCSW, and Psychiatry Appointments with Dr. Wu were Retrospective to Plaintiff's Condition pre-DLI, and thus Relevant.**

Plaintiff contends his talk therapy sessions and psychiatry treatment were relevant to assessing whether he qualified for a listing level impairment, and as such the ALJ had a duty to develop the record for these facts.  ECF 13 at 8, 15.  Defendant counters that this evidence is not relevant since it post-dates the DLI and is not retrospective into Plaintiff's condition during the disability period.  ECF 18 at 2–3.

Medical opinions that are retrospective, such that they refer back to chronic condition and symptoms, are relevant to a disability determination.  *See Svaldi v. Berryhill*, 720 F. App'x 342, 344 (9th Cir. 2017) ("Additionally, Dr. Agnani's 2012 and 2014 opinions are retrospective: they refer back to the same chronic condition. . . and they do not indicate that there was any decline in Svaldi's condition. . . . [T]he fact that those opinions were issued significantly after Svaldi's DLI does not undercut the weight those opinions are due.").  However, opinions rendered post DLI that do not address the claimant's level of functioning during the insurance period are not relevant to the disability determination.  *Szmania v. Kijakazi*, No. 21-36053, 2023 WL 6121770 at *1 (9th Cir. Sept. 19, 2023).

The Court finds the evidence of the talk therapy sessions and psychiatry appointments contain "observations made after the period for disability [that are] relevant" because they relate to conditions that arose during the period of disability.  *Miles v. Astrue*, No. 5:11-cv-04013, 2013 WL 5372337, at *3 n.1.  (N.D. Cal. Sept. 24, 2013) (citing *Kemp*, 522 F.2d 967 at 969.).  The therapy notes by Jeff Menezes, LCSW, and appointment notes from psychiatrist Dr. James Wu are "focused on Plaintiff's mental health issues that have existed since long before [the] alleged onset

7

date," and "should have been considered." *Saliha B. v. Saul*, No. 19-CV-08253 2021 WL 414862 at *10 (N.D. Cal. Sept. 13, 2021). The therapy notes and psychiatry treatment were for the exact mental health conditions the ALJ identified as severe impairments (anxiety, depression, and PTSD). AR 189.

For the identified severe mental health impairments, Menezes began treatment of Plaintiff on July 25, 2022, which is after the DLI. AR 14. However, Menezes' notes indicate that Plaintiff was seeking help for issues encountered prior to DLI, such as passing of Plaintiff's ex-partner, which Plaintiff discusses with Menezes at almost every appointment. AR 14–81. Additionally, psychiatrist Dr. Wu prescribed Plaintiff medication for mental health issues and emotional dysregulation. AR 126. The ALJ was required to consider this relevant because it was treatment for "mental health issues that existed long before" the DLI and are relevant to a disability determination. *Saliha,* No. 19-CV-08253 2021 WL 414862, at *10.

Not only was the information from Menezes and Dr. Wu relevant, the ALJ was required to "consider the opinions of medical providers." *Rosemarie V. v. Kijakazi*, No. 21-CV-02192, 2022 WL 4099457, at *9 (N.D. Cal., 2022). "When a medical source provides one or more medical opinions. . . [an ALJ] will consider those medical opinions" using the factors of supportability, consistency, relationship with the claimant and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c). The ALJ is required to "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. § 404.1520c(b). Where an ALJ does not explicitly reject a medical opinion or "set forth specific, legitimate reasons" for crediting one medical opinion over another, he errs. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).

In this case, the ALJ was required to "analyze the persuasiveness of [Menezes'] medical opinions and set out an analysis of supportability and consistency factors." *Johnson*, No. 21-15919, 2022 WL 2593516 at *1; *See* also C.D. v. Kijakazi, No. 22-CV-05574-VKD, 2024 WL 40210 at *5 n.7 (N.D. Cal. Jan. 3, 2024) ("[U]nder post-2017 regulations, the ALJ was required to consider [the social worker's] opinion using the same standard that applies to other medical sources."). Menezes submitted a letter which states the Plaintiffs "ongoing anxiousness,

depression, and . . . history of trauma" limits and interferes Plaintiff's ability to work a full-time job. AR 932. The letter addresses Plaintiff's impairment severity and functional effects and should have been considered in evaluating "severity of a claimant's impairment(s) and how it affects the claimant's ability to work." *Garrison v. Colvin*, 759 F.3d 995, 1013–14 (9th Cir. 2014).

Defendant's argument that the letter is not relevant because it is vague is unpersuasive because the ALJ may not disregard "the opinion of a social worker [unless] he 'gives reasons germane'" for doing so. *Wake v. Comm'r of Soc. Sec.*, 461 F. App'x 608, 610 (9th Cir. 2011). Here, the ALJ failed to provide any reasons for disregarding the opinion of Menezes, LCSW. AR 193–94.

Additionally, the ALJ erred by not considering the opinions of Dr. Wu, "a licensed physician" who is an acceptable medical source per 20 C.F.R. § 416.902. The ALJ, despite knowing Plaintiff's treatments with Dr. Wu, never requested a medical opinion nor did the ALJ request appointment notes. AR 223–24. The ALJ failed to explicitly evaluate the opinions of Dr. Wu when coming to conclusions regarding Plaintiff's impairment(s) and capacity to work. AR 192–93. Thus, by not "explicitly reject[ing] a medical opinion or set[ting] forth specific, legitimate reasons for crediting one medical opinion over another," the ALJ erred. *Garrison*, 759 F.3d 995 at 1012.

Accordingly, the Court finds the evidence from Menezes and Dr. Wu relevant to a disability determination, and the ALJ was required to consider these opinions and provide reasons for discounting them.

      **ii.    IV Infusion Treatments are Not Retrospective into Plaintiff's Condition pre-DLI and are thus Not Relevant.**

In contrast, the evidence of IV infusions proves a worsening of symptoms after the DLI has passed and thus "is not relevant to the severity of [Plaintiff's] symptoms prior to" the disability period. *Richard S. v. Kijakazi*, No. 23-CV-98-KSC, 2023 WL 6446192, at *3 (S.D. Cal. Oct. 3, 2023). Plaintiff was diagnosed with IBD in May of 2000, but received an updated diagnosis for Chron's disease on June 2, 2023. AR 87–88, 635. During a hospital visit for a different issue, Plaintiff underwent a colonoscopy on March 15, 2023, which revealed moderate ulceration and

9

erythema of ileocecal wall. AR 89, 109. Plaintiff began IV infusion treatment for his Chron's disease on October 3, 2023. AR 109. Plaintiff was also hospitalized for a CT enterography on December 18, 2023, for a Chron's disease flare up. AR 305–10.

The hospitalizations in March and December of 2023 and the IV treatments occurred well after the DLI and show a worsening of Plaintiff's IBD/Chron's disease symptoms because no such treatment was required prior to the DLI. Therefore, the ALJ did not have a duty to develop the record concerning the treatment for Chron's disease because it demonstrates a "deterioration in the [claimant's condition] subsequent to" the DLI and is not relevant to a disability determination. *Waters*, 452 F.2d 855 at 858.

### C. The ALJ's Error in Developing the Record and the Failure to Consider Opinions of Menezes and Dr. Wu was not Harmless.

The Plaintiff argues the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Menezes and treatment from Dr. Wu, which should result in remand. ECF 13 at 20. Plaintiff claims this error is not harmless because had the ALJ considered opinions of Jeff Menezes, LCSW, treatment by Dr. Wu, the ALJ's determination that Plaintiff did not meet the requirements for listing impairments 12.04, 12.06 and 12.15 (depressive disorder, anxiety disorder and trauma-related disorders) would have been undercut. ECF 13 at 9–16; *see* Appendix 1 Subpart P 20 C.F.R. § 404. Plaintiff argues the ALJ improperly evaluated the opinion of Menezes in making the RFC determination. ECF 13 at 16–17. Succinctly, Plaintiff contends had the ALJ considered this medical evidence, he would have found Plaintiff disabled pursuant to steps three or five of the sequential evaluation process. ECF 13 at 20.

On the other hand, Defendant, relying solely on the evidence from the disability period, argues the Plaintiff fails to qualify for a listing level impairment, so the ALJ did not err when concluding Plaintiff did not meet step three. ECF 18 at 3–8. Defendant also contends the ALJ reasonably found Plaintiff capable of a reduced range of light work because some of Plaintiff's conditions, such as his back pain and lifting limitations, had improved during the disability period, so the ALJ's determination was supported by substantial evidence. ECF 18 at 9; AR 667. Defendant counters the ALJ did not err in ignoring medical opinions by Menezes or Dr. Wu

10

because this evidence was not retrospective into the Plaintiff's condition during the disability period. ECF 18 at 2.

In *Marsh v. Colvin*, the Ninth Circuit affirmed that it has applied a harmless error analysis to social security cases where an ALJ ignores a medical opinion, declining to draw a distinction based on the nature or source of evidence ignored by the ALJ. 792 F.3d 1170, 1172 (9th Cir. 2015). ALJ's errors are considered harmless if they are "inconsequential to the ultimate nondisabiltiy determination." *Id.* At 1173. The court must conclude an error is not harmless if a "reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.*

Here, the ALJ's error of not developing the record to obtain opinions by Menezes and Dr. Wu was not harmless because it prevented Plaintiff from having "additional factual basis for challenging" opinions of consulting examiners the ALJ considered. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 933–34 (9th Cir. 2014). A few days before the hearing, the Plaintiff sent the ALJ a letter from Menezes alleging Plaintiff's mental health issues interfere with Plaintiff's ability to work a full-time job. AR 932. The letter was accompanied with a list of medications and upcoming appointments, including one with Dr. Wu. AR 933. Despite the letter being in the record for the ALJ to review, the ALJ never followed up to request therapy notes or psychiatric appointment information, and the Plaintiff, being unrepresented, was not aware such information was missing from the record. AR 202–249. The ALJ came to a determination about the credibility of Plaintiff's symptoms in relation to Plaintiff's capacity to work without collecting key evidence from Menezes or Dr. Wu that might "suggest an opposite result." *Nandon v. Saul*, 851 Fed. App'x 24, 28 (9th Cir. 2017).

Moreover, the therapy notes and psychiatry appointment information may have helped Plaintiff prove he met listing requirement in paragraph (B) for 12.04, 12.06 or 12.15, *or that Plaintiff had a reduced RFC*. Appendix 1 Subpart P 20 C.F.R. § 404. The evidence, which was absent from the record, may have resulted in a different outcome. As such, "it cannot be clear from the record that failure to obtain [the information] was inconsequential." *Garcia*, 768 F.3d 925 at 933-34 (citation omitted). This Court cannot confidently conclude that the ALJ's failure to

11

properly discuss competent evidence offering the medical opinion of individuals who treated the Plaintiff was harmless. *See Marsh*, 792 F.3d 1170 at 1173 ("In the circumstances of this case, where the ALJ did not even mention Dr. Betar's opinion that Marsh's chronic bursitis rendered her 'pretty much nonfunctional,' we cannot 'confidently conclude' that the error was harmless"); *see also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir.2006) (finding ALJ's "failure to properly discuss competent lay testimony favorable to the claimant" not harmless because, if fully credited, that testimony supported an alternative conclusion). Because this Court finds that competent, and ignored, evidence of Plaintiff's full medical history could support a finding contrary to that made by the ALJ in this case, it cannot confidently say that these errors were harmless.

## V.     INSTRUCTIONS ON REMAND

Accordingly, the Court **GRANTS** Plaintiff's request, reverses, in part, the Commissioner's final decision, and **REMANDS** this case to the ALJ for further proceedings. Because this case will be remanded for further proceedings, the Court need not address Plaintiff's remaining arguments regarding qualification for other listing requirements or RFC calculations. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

On remand, the ALJ shall specifically develop the record to obtain appointment notes and medical opinions from Jeff Menezes, LCSW and Dr. James Wu, and evaluate these opinions at steps three and four of the five step sequential evaluation process. *See Marsh*, 792 F.3d 1170 at 1173 ("In the circumstances of this case, where the ALJ did not even mention Dr. Betat's opinion. . . . We think it is most appropriate to . . . remand to the ALJ, and specifically invite the ALJ to comment on Dr. Betat's medical opinions and records.").

The ALJ is also instructed to consider the other issues raised in Plaintiff's briefing and modify any ensuing ALJ decision as appropriate.

## VI.     ATTORNEYS' FEES

The Court has the authority to award collection of attorneys' fees per two separate statutes: 42 U.S.C.A. § 406(b) and 28 U.S.C.A. §2412, which is a part of the Equal Access to Justice Act

(EAJA). While fee awards "may be made under both prescriptions," the Plaintiff's attorney "must refund to the claimant the amount of the smaller fee, up to the point the claimant receives 100 percent of the past due benefits." *Giesbrecht v. Barnhart*, 535 U.S. 789, 789 (2002).

### A.  42 U.S.C.A. § 406(b) Fees are Currently Not Appropriate

"Whenever a court renders a judgement favorable to a claimant. . . who was represented before the court by an attorney, the court may determine and allow a reasonable fee for such representation, not in excess of 25 percent of the total past-due benefits to which claimant is entitled." 42 U.S.C.A. § 406(b)(1)(A). It is the duty of the district court "to assure that the reasonableness of the fee is established." *Crawford v. Astrue*, 586 F.3d 1142, 1149 (9th Cir. 2009).

To determine whether a fee is reasonable, the court must first look to the contingent-fee agreement, testing it for reasonableness and "appropriately reduce[] the attorney's recovery based on the character of the representation and the results the representative achieved." *Giesbrecht*, 535 U.S. 789 at 789. "The court-awarded fee is the only way a successful SSDI attorney may recover fees for work performed before the district court." *Crawford*, 586 F.3d 1142 at 1147. It is on the attorney for the successful plaintiff to "show that the fee sought is reasonable for the services rendered." *Giesbrecht*, 535 U.S. 789 at 789 ("If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court. And if the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order.").

In this case, the Court is remanding for further proceedings, and an award of benefits has not yet occurred. Additionally, no contingency fee agreement has been included as a part of the administrative record for the Court to review. Thus, a ruling on the reasonableness of the attorney's' fees would be premature. *See Workman v. Comm'r of Soc. Sec.*, No. 19-CV-03895-YGR, 2021 WL 4281334 at *1 (N.D. Cal. Sept. 21, 2021) ("Where the court has rendered a judgment favorable to a claimant by reversing an earlier determination by an administrative law judge and remanding for further consideration, the court may calculate the 25% fee based upon any past-due benefits awarded on remand."); *see e.g., Crawford*, 586 F.3d 1142.

**B.     28 U.S.C.A. § 2412 (EAJA) Fees are not Appropriate at this Time.**

If the Government's position in opposing Plaintiff is not substantially justified, then a "party seeking an award of fees and other expanses, shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award." 28 U.S.C.A. § 2412. To demonstrate that the Government's position was substantially justified, "the Secretary has the burden of establishing that her conduct had 'a reasonable basis both in law and fact.'" *Flores v. Shala*, 49 F.3d 562, 569–70 (9th Cir. 1995) ("The ALJ failed to consider [a medical report], both in posing hypothetical questions to the vocational expert and in determining that Flores was not disabled. The Secretary's decision to defend this error was not substantially justified."). If a district court remands for further proceedings, then attorneys' fees can "only be filed after the completion of the post-remand proceedings and a return to the district court to enter a judgement." *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 607 (9th Cir. 2007).

In this case, the Court is currently remanding for further proceedings, thus, award of attorney's fees per 28 U.S.C.A. § 2412 is not appropriate at this stage. *Id.*

### VII.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for remand is **GRANTED**, the Commissioner's final decision is reversed, in part, and the above-entitled matter is hereby **REMANDED** to the ALJ for further proceedings consistent with this Order.

Specifically, the ALJ shall (1) develop the record to include appointment notes and the medical opinions from Jeff Menezes, LCSW, and Dr. James Wu; (2) address the opinions from Menezes, LCSW, and Dr. Wu at steps three and four of the five step sequential evaluation process, and, (3) consider the other issues raised in Plaintiff's briefing regarding qualification for step three, namely: listing requirements and step four residual functional capacity (RFC) calculations and modifying any ensuing ALJ decision as appropriate.

//

//

//

1  The case will be terminated upon resolution of attorney's fees, if any.  If no attorney's fees
2  request is received within thirty (30) days of final judgment in the action, the Clerk of the Court
3  shall terminate the case.
4  IT IS SO ORDERED.
5  Dated: September 2, 2025

_____
TRINA L. THOMPSON
United States District Judge

15